IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MICHELE E. RUFF, Person Representatives of the Estates of Norman and Geraldine Elsberry, deceased; and REBECCA KALLHOFF, Person Representatives of the Estates of Norman and Geraldine Elsberry, deceased,<br><br>Plaintiffs,<br><br>vs.<br><br>RELIANT TRANSPORTATION, INC., CARL WHITLOCK, and RANDY DICKSON,<br><br>Defendants. | **8:23CV92**<br><br>**MEMORANDUM AND ORDER** |

This matter comes before the Court on Plaintiff's motion to remand for lack of subject-matter jurisdiction in a motor-vehicle injury suit between nondiverse parties. Filing No. 11. The motion is granted.

In June 2021, a tractor-trailer contracted by Defendant Reliant Transportation Inc., a Department of Transportation authorized broker, killed Geraldine and Norman Elsberry. Representatives for the estates, Plaintiffs Michele Ruff and Rebecca Kallhoff, leveled a negligent-hiring claim in the District Court for Lancaster County against Reliant who, asserting complete preemption by federal law governing interstate motor freight, removed to this Court and moved to dismiss. Filing No. 1; Filing No. 6.

That federal law, placed for whatever reason within the Federal Aviation Administration Authorization Act of 1994, reads:

(1) General rule.—Except as provided in paragraphs (2) and (3), a State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor

1

carrier . . . broker, or freight forwarder with respect to the transportation of property.

And the exception:

(2) Matters not covered.—Paragraph (1)—(A) shall not restrict the safety regulatory authority of a State with respect to motor vehicles . . . .

49 U.S.C. § 14501(c).  The parties dispute both whether the general preemption clause displaces Plaintiffs' claim and whether the exception saves it.  A tangled web of presumptions governs here.

In general, federal subject matter jurisdiction must appear on the face of a complaint.  *Caterpillar Inc. v. Williams*, 482 U.S. 386 (1987).  A removing party bears the burden to establish jurisdiction, and doubts are resolved in favor of remand.  *Moore v. Kansas City Pub. Sch.*, 828 F.3d 687, 691 (8th Cir. 2016).  Even preemption of state law does not afford jurisdiction unless so complete as to displace the entire field.  *Minnesota by Ellison v. Am. Petroleum Inst.*, 63 F.4th 703, 709 (8th Cir. 2023).  Ordinarily, and outside questions of removal, interpretation of an express-preemption provision probes Congressional intent free of any presumptions.  *Watson v. Air Methods Corp.*, 870 F.3d 812, 817 (8th Cir. 2017) (en banc).  Yet within the long tradition of leaving to the States' their traditional realms of authority, *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938), questions of preemption "begin with the assumption that the historic police powers of the States are not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress."  In such circumstances, where Congress's language offers two plausible meanings, "we must accept the reading that disfavors pre-emption."  *R. J. Reynolds Tobacco Co. v. City of Edina*, 60 F.4th 1170, 1176 (8th Cir. 2023) (quoting both *Altria Grp., Inc. v. Good*, 555 U.S. 70 (2008) and *Bates v. Dow Agrosciences LLC*, 544 U.S.

431 (2005)) (cleaned up).  Moreover, "because the lack of a substitute federal cause of action"—Reliant's thrust here—"would make it doubtful that Congress intended to preempt state-law claims, without a federal cause of action which in effect replaces a state law claim, there is an exceptionally strong presumption against complete preemption." *Minnesota*, 63 F.4th at 710.

On this terrain, it remains unclear whether the FAAAA generally preempts Plaintiffs' claim.  It is at least settled that the provision displaces state law having a connection with, or reference to, motor carrier rates, routes, or services and significantly impacts, if only indirectly, Congress's deregulation of the motor-carriage market.  *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 370–71 (2008).  But neither the Supreme Court nor the Court of Appeals for the Eighth Circuit have addressed whether such reasoning preempts a negligent-hiring claim against a broker arising from a crash.

The two appellate treatments of the matter, embodying the divergent lines of decision, have agreed that the general provision does preempt such claims.  The Courts of Appeals for both the Ninth and Eleventh Circuits have reasoned that a negligent hiring claim imposes liability at a broker's core point of service, the selection of a motor carrier. *Miller v. C.H. Robinson Worldwide, Inc.*, 976 F.3d 1016, 1024 (9th Cir. 2020); *Aspen Am. Ins. Co. v. Landstar Ranger, Inc.*, 65 F.4th 1261, 1267 (11th Cir. 2023).  But neither decision arose in the context of removal, nor do they appear to have meaningfully considered the presumption against Congressional interference with traditional state authority governing at this stage.

More importantly, both panels accepted a more or less face value the assertion that a negligent hiring claim seeks to regulate broker conduct at the core point of service.

3

But presumably, Reliant did not hire the carrier to kill the Elsberrys—it hired the carrier to transport and deliver a shipment.  The fatal crash thus a detour well outside the scope of service, Plaintiffs' negligent hiring claim asks not so much whether Reliant erred in selecting a carrier to deliver a shipment, but whether it so erred as to select a carrier that both failed to deliver and killed two bystanders in the process.  *Greening v. Sch. Dist. of Millard*, 223 Neb. 729 (1986).  It is hard to see how wrongful-death liability significantly impacts the market for interstate motor carriage if liability only arises after the market has failed in a particular instance.  *Rowe*, 552 U.S. at 370–71.

Atop that, the Eighth Circuit has found identical text in the Airline Deregulation Act of 1978—"a State . . . may not enact or enforce a law . . . related to a price, route, or service of an air carrier"—does not insulate air carriers from a state-law wrongful discharge claim, reasoning that such claim "like a claim alleging race or age discrimination—does not frustrate the ADA's primary economic objectives."  Notably, for present purposes, the Court also observed that "[l]aws related to 'safety' are not synonymous with laws related to 'service.'"  *Watson v. Air Methods Corp.*, 870 F.3d 812, 819 (8th Cir. 2017).

Reliant sets much in store by the panel's next observation:

> It is unlikely, for example, that all personal-injury claims against air carriers based on unsafe operations or maintenance are expressly pre-empted by the ADA, given that federal law requires carriers to maintain insurance for bodily injury, death, or property damages resulting from "the operation or maintenance of the aircraft.

noting that while motor carriers too must carry a minimum insurance policy, freight brokers need only maintain a nominal bond to cover unpaid freight charges.  *Id.*  But this reads too much into too little.  The distinction may well evince no more than Congress's

expectation that brokers will only rarely suffer liability.  That aside, the argument might have some force, were not the purchase of insurance to cover foreseeable commercial mishaps merely an exercise in the ordinary course of reasonable prudence.

Given the unconclusive text, and cognizant of the presumption against displacement of traditional state authority, strengthened where Congress has not substituted a claim for relief, this Court fails to find within the general preemption clause of the FAAAA the clear legislative intent necessary to supplant Plaintiffs' claim.  Yet even assuming otherwise, the exception provision would save Plaintiffs' claim.  There, to eliminate doubt, Congress carved out from preemption "the safety regulatory authority of a State with respect to motor vehicles."  49 U.S.C. § 14501(c).  On this point, the appellate treatments diverge.

The Ninth Circuit found similar negligent hiring claims excepted from preemption, reasoning, first, that common law tort constitutes a traditional bedrock state regulatory authority, and second, that the claims promote motor-vehicle safety.  *United States v. Mier-Garces*, 967 F.3d 1003, 1030 (10th Cir. 2020).  So too here.  *Sparks v. M&D Trucking, L.L.C.*, 301 Neb. 977 (2018).

The Eleventh Circuit agreed that such a claim serves state safety regulatory authority but disagreed that it had the requisite *direct*, as the panel construed the statute, motor-vehicle connection.  65 F.4th at 1270–71.  The panel emphasized the distinction between a "broker" and a "motor carrier," however, the panel did not answer the question: *broker for what*?  Motor carriage.  Reliant and its fellow DOT authorized brokers *exist* to arrange for the carriage of goods *by motor vehicle*—to put motor vehicles on the roads.

A direct connection to motor vehicles, which seems to ask more than the statute does, appearing on the face of the relationship, the exception applies.  49 C.F.R. § 371.2.

Reliant's remaining bases for removal similarly fail.  Setting aside the total lack of support for, in essence, an abbreviated federal-officer or -agent removal grafted onto 28 U.S.C. § 1337—which grants jurisdiction "arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies" (read, the Sherman, Clayton, and Federal Trade Commission Acts, *etc.*)—Reliant again mistakes Plaintiffs' safety-based negligence claim for a commercial one.  And while this case may certainly raise interesting, even substantial, federal questions regarding a broker's duty, the exception provision compels the conclusion that Congress wished to leave those questions to the state courts in the first instance.  *Minnesota*, 63 F.4th at 711.

THEREFORE, IT IS ORDERED THAT Plaintiffs' motion to remand, Filing No. 11, is granted to the extent above.  Lacking subject-matter jurisdiction, the case is remanded to the Lancaster County District Court.

Dated this 25th day of May, 2023.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge